Harward et al. v. Robinson.

THOMAS HARWARD ET AL.

v.

HENRY ROBINSON, Adm'r, etc.

1. LIABILITY OF ADMINISTRATOR—FUNDS DEPOSITED IN INDIVIDUAL NAME.—Where an administrator deposits in his own individual name, funds of the estate in a bank which fails while holding such deposit, the loss is his own and not that of the estate; and this though he had no other funds in such bank, and informed its officers at the time of making the deposit that the funds were held by him in trust.

2. ADMINISTRATOR DEPOSITING FUNDS OF ESTATE IN HIS INDIVIDUAL NAME.—Where an administrator without any authority from the court deposited the funds of the intestate's estate in a bank outside of the State, and the money was deposited in his individual name, but he informed the teller of the bank at the time of the deposit that it belonged to the estate, and it was not mingled with funds of his own, but with other trust funds also in his custody, and the bank failed. *Held,* that the administrator was personally liable for the loss; that taking the money outside of the State was an unlawful act, and the fact that it was discretionary with the court, if an application for such order had been made, to allow it to be deposited outside of the State, can not have any bearing on the liability.

3. GIFT TO ADMINISTRATOR BY CREDITORS.—Where some of the larger creditors of an estate thinking that the administrator had acted in good faith, even if unadvisedly, in depositing the money of the estate and losing it, and regarding the loss as a hardship, made the administrator a personal gift of eight per cent. of their claims against the estate, their object being to divide the loss with him to that extent. *Held,* that the heirs and distributees of the estate could not claim the money thus given.

4. TAXING ADMINISTRATOR WITH INTEREST.—The court is of opinion that the administrator should not be taxed with interest on the moneys in his hands, as it is manifest from the evidence that it was not reasonably possible the administrator could have made final settlement of the estate in two years.

5. COSTS.—The court is of opinion that the estate should pay the ordi-

nary costs of final settlement and the costs occasioned by the exceptions to the report, except the costs occasioned by the litigation over the bank deposit, which the administrator should personally pay.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding. Opinion filed April, 18, 1884.

Messrs. HAPPY & TRAVOUS, for appellants; that as the funds of the estate were deposited in the individual name of the administrator, and not as administrator, and while so deposited were lost by the failure of the bank, the administrator is personally liable for the same, cited 2 Story's Eq. Juris. § 1270; Perry on Trusts, §§ 441, 443 and 448; Webster v. Pierce, 35 Ill. 158; Williams v. Williams, 55 Wis. 300.

As to the $1,600 rebated by the creditors from their claims, the principle of equity is that trustees and others sustaining fiduciary relations can not deal on their own account with the thing or the persons falling within that trust or relationship: Thorp v. McCullum, 1 Gilm. 614; Dennis v. McCagg, 32 Ill. 430; Phelps v. Reeder, 39 Ill. 173; Lockwood v. Mills, 39 Ill. 602; Wingate v. Pool, 25 Ill. 118; Nelson v. Hayner, 66 Ill. 487; Whitney v. Peddicord, 63 Ill. 249; Cookson v. Richardson, 69 Ill. 137; Hough v. Harvey, 71 Ill. 72.

As to when an administrator should be charged with interest: R. S. Ch. 3, § 113; Horner's Probate Practice, § 309; Hough v. Harvey, 71 Ill. 72.

Messrs. METCALF & BRADSHAW, for appellee; cited Parsley v. Martin, Reporter of Boston, September 19, 1883; Beasley v. Watson, 41 Ala. 234–9; Bank v. Coleman, 20 Ala. 140; McTyer v. Steel, 20 Ala. 487; Estate of Schofield, 99 Ill. 513.

If an administrator act honestly and prudently, though there be a loss to, or a total diminution of the intestate's estate, he will not be liable: Christy v. McBride, 1 Scam. 75; Whitney v. Peddicord, 63 Ill. 249; Voorhees v. Stoolhoff, 11 N. J. 145; Deleny v. Ivey, 2 Jones, (N. C.) Eq. 370; Webb v. Bellinger, 2 Desaus, S. C. 482; State v. Meagher, 44 Mo.

356; Merritt v. Merritt, 62 Mo. 150; Fudge v. Dunn, 51 Mo. 264; 2 Story's Eq. Juris., 1269; Furman v. Coe, 1 Cal. 96; Raynor v. Prescott, 3 Johnson, Ch. 578; Rubottom v. Morrow, 24 Ind. 202; Mikell v. Mikell, 5 Rich. 220; Noble v. Jones, 35 Tex. 692; Dorchester v. Effingham, Tamlin, 279; Key v. Jones, 52 Ala. 238.

BAKER, J.  This controversy arises upon the final settlement of an administrator.  Prior to May 21, 1879, the administrator, without any authority from the court, deposited the funds of the estate in the Broadway Bank of St. Louis, Missouri.  The money was deposited in his individual name, but it appears he informed the teller of the bank at the time of the deposit, that it belonged to the Harward estate.  It was not mingled with funds of his own, but was mingled by the deposit with other trust funds also in his custody.  At the date mentioned the bank failed, there then being to the individual credit of appellee, in said deposit account, the sum of $7,359.86.  Of this sum he claimed $5,263.19 was money of the Harward estate.  Subsequently a dividend of fifty cents was paid by the bank.  The administrator, in his report, claims a credit for $2,631.60, so lost by the failure of the bank, and for $290.29 for expenses incurred in looking after said bank matter.  The exceptions filed by the heirs to these two items were overruled by the circuit court and the items were allowed the administrator as credits.  Where an administrator deposits, in his own individual name, funds of the estate in a bank which fails while holding such deposit, the loss is his own and not that of the estate; and this though he had no other funds in such bank, and informed its officers at the time of making the deposit that the funds were held by him in trust.  See Williams, adm'r, v. Williams, 55 Wis. 300.  In the case cited there is a very full and satisfactory discussion of the authorities; and it were a work of supererogation to now go substantially over the same ground.  This case is stronger than the Wisconsin case in that the fund was mixed with other funds.  The test is the loss of the identity of the trust fund, the placing it in such condition as that it has no

Harward et al. v. Robinson.

ear-marks, the having it in such shape as that it has impressed upon it no sign or indication of the specific trust to which it belongs.

The decision of the Supreme Court in the matter of the estate of Schofield, 99 Ill. 513, is not in point. The question there considered was as to, under what circumstances, in view of the provision of our statute in that regard, an administrator is chargeable with interest on the trust fund. Had the money there on deposit been lost by the failure of the bank, there is no doubt the administrator would have been liable. Had the administrator when he first collected the money put it in his pocket-book and mingled it with his own money, and it had been lost, he would have been liable; and yet, if under like circumstances it were not lost, he would not, under our statute, be chargeable with interest from the time he collected it. Again, Section 85, Chapter 3, R. S., provides, among other things, that no administrator shall, without the order of the court, remove any property wherewith he is charged by virtue of his letters, beyond the limits of this State, and that in case he does so remove any such property, judgment shall be rendered against him and his securities for the full value thereof, and such other damages as the parties interested may have sustained by reason thereof. The intention of this statute is to keep the trust property within the territorial limits of the State, and thereby within the jurisdictional reach of the court in which administration is had. The administrator then, when he removed the property from the State without any authority from the court and carried it into the State of Missouri, did an unlawful act and one expressly prohibited, and that too under severe penalties, by the statute. As a result of this unlawful act the trust fund was lost. Without the fact of the subsequent loss the statute, in express terms, made both him and his sureties personally liable for the full value of the property and for damages.

It were strange if the consequent actual loss and damage, instead of aggravating the offense, should have the effect to palliate it and relieve him from all liability whatever. It is urged it was discretionary with the court to allow the funds to be de-

posited in St. Louis, had an application for such order been made, and that therefore the matter should be considered, under the particular circumstances of the case, as though the order had in fact been entered.    In view of the evident intent of the statute and the fiduciary character of the funds, it can not be assumed the court would, in the absence of any necessity therefor, have permitted the transfer of the trust funds to a foreign jurisdiction.

There were numerous banks of general deposit and good credit in the county where the administrator resided and the administration was pending, and at least two of these were located at the county seat from which his letters issued and at which he was required to make his settlements.    And so the argument based on necessity has no application.    In our view, it was erroneous, and on both the grounds stated herein, to credit the administrator on his settlement with the moneys lost by the failure of the Broadway Bank and with the amounts expended by him in recovering that part of the fund on deposit in the broken bank, that was afterward collected.

The exceptions of the heirs to the report of the administrator in that regard should have been sustained.

We think the rulings of the court upon the other exceptions taken to the report, were right.    The estate was quite large, its assets being some $95,000.    About $150,000 of claims were filed against it, of which over $50,000 were defeated by litigation.    Its affairs were greatly complicated, and Judge Dale, who has had a long and varied experience upon the county bench in a large and populous county, expresses in his testimony his doubts whether there ever was an estate administered upon with such an amount of labor in it.

It was reasonably to be expected the fees paid, and the costs and expenses incurred in the course of the administration would be considerable.    As respects the item of $1,600, there is no doubt that profits arising from the use of a trust fund inure to the benefit of the cestui que trust.    The case of Wingate v. Pool, 25 Ill. 118, is not in point to charge the administrator with this item.    In Wingate's case a profit was

made by discharging the claims with bank paper which was at a discount.  In this case no profit was made by the administrator, but he actually lost over $2,600 of the trust fund, and for that he was personally accountable, and he also expended some $300 in endeavoring to recover the lost money. Some of the larger creditors of the estate, thinking he had acted in good faith, even if unadvisedly, in depositing the money as he did, and regarding the loss as a hardship as respects him, made [him a personal gift of eight per cent. of their claims, their object being to divide with him the loss to that extent.  There is evidence that to some if not all these creditors, there was an understanding this eight per cent. should be paid back in the event it should be judicially held the administrator was not personally liable for the loss.  As the effect of our decision is to hold him responsible for the loss whereby the estate is made whole and the assets not diminished, it is difficult to see upon what just ground the heirs and distributees can claim this $1,600.  They receive their money as it is nominated in the bond, and it is no concern of theirs that others, from considerations wholly personal to the obligor, have made him a donation to help him pay that bond.

As respects the claims made by the heirs and distributees for interest, we would call attention to the latter clause of Section 113, Chapter 3, R. S., 1874.  It is manifest from the evidence it was not reasonably possible the administrator could have made final settlement of this estate in two years or in anything like that time; and it seems both the circuit and the county courts held that good cause was shown by him why he should not be taxed with interest on the moneys in his hands.

We are not prepared to say upon consideration of the voluminous testimony contained in the record, that this holding of these courts was erroneous.  A point is made upon the question of the costs of this litigation.  It is proper the estate should pay the ordinary costs of final settlement.  The costs occasioned by the litigation over the matter of the Broadway Bank deposit should be paid personally by appellee.  The

costs occasioned by the other exceptions to the report, should be taxed to the estate. An apportionment of the costs upon this basis can be made in the court below. As respects the costs of this court they will be taxed personally against appellee.

The judgment and order of the circuit court is reversed, and the cause remanded for further proceedings in harmony herewith.

Reversed and remanded.