## GEORGE L. CLIFFORD, EXECUTOR, ETC.,
v.
## WILLIAM DAVIS, ADMINISTRATOR, ETC.

*Wills—Investment of Residuary Fund for Benefit of Life Tenants—Reasonable Time—Res* Adjudicata*—Interest on Assets—Estoppel.*

1. When a testator has directed the conversion of one species of property belonging to a residuary fund into another, or the residuary fund to be invested in a particular manner, and has given a life estate in the fund as thus converted or invested, such life interest will commence when the conversion takes place, or the investment is made. But such conversion or investment must be within a reasonable time. In this State, in analogy to the time allowed for the settlement of the estate, two years are held to be a reasonable time.

2. In the case presented, it is *held :* That the court below properly charged the executor with interest on his note due the estate; that the doctrine of *res adjudicata* does not apply to said interest, because of the approval by the County Court of the executor's reports; that the executor was properly charged with 10 per cent. interest on the moneys in his hands after the expiration of two years and six months from the date of his letters testamentary and up to the time of his investment of the funds; that it is unreasonable to suppose that the testator intended no investment of money should be made by the executor until every article and parcel of property was disposed of and turned into money; that the executor is not estopped from contesting a claim for interest on uninvested assets prior to the expiration of the statutory period by reason of a report charging him with such interest, which he signed, but which was never acted on by the court; that the life tenants were not entitled to the net profits of the estate from the death of the testator to the time of re-investment; that said profits are to be considered as assets to increase the principal of the trust fund; and that the matter of a certain item having been ordered paid by a court of competent jurisdiction to the life tenants, is *res adjudicata.*

[Opinion filed January 22, 1887.]

APPEAL from the Circuit Court of Knox County; the Hon. JOHN J. GLENN, Judge, presiding.

Statement by BAKER, P. J. William Hester died testate on the 23d of December, 1877. Letters testamentary were issued January 9, 1878, to appellant, George L. Clifford, the

Clifford v. Davis.

executor appointed in the will.   The third clause of the will was as follows :

" 3.   After the payment of the aforementioned charges, I will, devise and bequeath unto my beloved nephew, George L. Clifford, all the rest, residue and remainder of my estate, both real and personal, of every nature and kind whatsoever, to be held by him in trust for the following purposes: It is my wish that as soon after my death as the best interest of my estate will permit, he sell, either at public or private sale, all of my said property, real and personal, together with all claims of every or any kind I may have upon any person or thing, so that the whole of my assets shall be turned into money.   It is further my desire that the whole of such proceeds shall then be invested by said Clifford in good and sufficient securities at such legal rates of interest as he may be able to obtain, which interest shall be collected by him and paid over by him, semi-annually, if practicable, to my daughter, Fanny Hester, and to my daughter-in-law, Jane Hester, now residing in East Shire, in the County of Surrey, England, for their undivided use and benefit, in equal shares, so long as they both shall live; and on the death of either of them the whole of said interest is to be paid to the surviving one so long as she shall live, and at her death it is my will that the whole remaining principal and interest, if any, that is to say, the whole assets remaining of my estate, shall be equally divided amongst the three surviving children of my dear sister, Elizabeth Clifford, share and share alike."

March 12, 1879, the executor filed in the County Court of Knox County his first report or account current, showing, among other things, a balance then in his hands of $5,912.52; and this report was on the same day approved by the court.

On the 8th day of August, 1879, the County Court made an order, based on a written motion of Jane Hester and Fanny Hester bearing date July 30, 1879, directing the executor, upon their filing a refunding bond, to pay to them the sum of $506.51, being the interest that accrued from the death of the testate to the first day of March, 1879, on certain promissory notes made to the deceased in his lifetime, and which interest,

as well as the principal sums mentioned in said notes, had been collected by the executor, as shown by his aforesaid report of March 12, 1879.

The executor filed his second report or account current on the 31st day of August, 1881, showing a balance in his hands of $7,532.78, and that he had on the 19th of April, 1881, invested $7,500 of the money of the estate in a mortgage security bearing 7 per cent. interest, said interest payable annually, and said report was on that day approved by the court.

On the same 31st of August, 1881, Fanny Hester and William Davis, administrator of Jane Hester, who had died on the 4th of February, 1880, entered their motion in the County Court that the executor be required to charge himself with interest on his $3,000 note in the inventory mentioned, at the rate therein specified, from the first of March, 1879, to the maturity of said note; also to charge himself with 10 per cent. interest on all moneys in his hands after the expiration of two years and six months from the granting of letters testamentary to the time of making the investment; also to charge himself with six per cent. interest on the balance of all moneys in his hands from March 1, 1879, up to the time of investment; also to pay to Fanny Hester and to William Davis, administrator of Jane Hester, the parts of said interest belonging to them respectively; and also to pay to them in parts, as due to them respectively, the sum of $559.70, being the net balance of rents of the farm mentioned in the inventory of the estate, from the death of the testator to March, 1881, the date the farm was sold by the executor.

From the order and decree entered in the County Court upon the matters above mentioned, an appeal was taken to the Circuit Court, where there was a hearing *de novo*. Upon this latter hearing considerable evidence was introduced; and among other things a third report made by the executor to the County Court, bearing date July 15, 1884, and showing a balance of $6,906 in his hands, was given in testimony.

The decree rendered by the Circuit Court allowed the two charges of 10 per cent. interest against the executor; refused

Clifford v. Davis.

to allow any claim for 6 per cent. interest on moneys in the hands of the executor between the dates of March 1, 1879, and July 9, 1880, the latter being the time of the expiration of two years and six months from the date of letters testamentary; ordered the allowances of 10 per cent. interest against the executor to go to the increase of the principal of the trust fund; ordained that Fanny Hester and the administrator of Jane Hester were entitled to interest at the rate of 5 per centum per annum on the clear residue of the estate as determined from the death of the testator to the date of the death of Jane Hester, less $506.51 received by them under the order of August 8, 1879; and that Fanny Hester was entitled to 5 per cent. interest on the clear residue of the estate from the death of Jane Hester, February 4, 1880, to April 19, 1881, the date of the investment by the executor; and ascertained these several amounts upon the basis indicated and made order for their payment.

The executor, George L. Clifford, appealed the cause to this court, and since the appeal has been pending Fanny Hester has died, and William Davis, her administrator, has been substituted upon the record in her place and stead.

Various errors and cross-errors have been assigned.

Messrs. McKENZIE & CALKINS, for appellant.

Mr. GEORGE W. THOMPSON, for appellee.

When a will is made directing a conversion of the whole estate and an investment to be made, and then the interest to be paid to tenants, and part of the estate at the time of the death is invested, the interest on that part already invested belongs to the life tenants.  2 Jarman on Wills, 196 ; 2 Redfield on Wills, 470 ; Sargent v. Sargent, 103 Mass. 297 ; Lovering v. Minot, 9 Cush. 370 ; Lamb v. Lamb, 11 Pick. 370, Eyre v. Golding, 5 Binney, 473 ; Hilyard's Estate, 5 Watts & S. 30 ; Healey v. Toppon, 45 N. H. 267 ; Cooke v. Meeker, 36 N. Y. 15 ; Williamson v. Williamson, 6 Paige, 298 ; McPherson v. McPherson, 1 Macq. 243, 249 ; Brown v. Gellatly, 2 Law Rep. Ch. 751.

BAKER, P. J.   The third clause of the will of William Hester devised the residue of his estate, both real and personal, to appellant in trust, and  stated it was the wish of the testator that as soon after his  death  as  the best interest of his estate would permit, appellant should sell all of the property, so that the whole of the assets should be turned into money.   It further directed that the  whole of the proceeds should  then be invested by appellant in  securities  drawing  interest, which interest should be collected by him as it accrued  and  paid over to his daughter, Fanny  Hester, and his daughter-in-law, Jane Hester, in equal shares, with right of survivorship in them  in respect to such interest; and it provided that on the death of the survivor the whole remaining assets of the estate should be  equally divided among  the three  surviving children of Elizabeth Clifford, sister of the  testator.

1.   The general rule is, that in case  of the bequest of a life estate in a residuary fund, and where no time  is  prescribed in the will for the  commencement of the  interest  or the enjoy. ment of the use or income of such residue, the legatee for life is entitled to the interest or  income of  the  clear  residue, as afterward ascertained, to  be computed from  the time of the death of the. testator.   When, however,  the  testator  has directed one species of property to  be converted into another, or the residuary fund to  be  invested  in a particular manner, and has given a  life  estate in the fund as thus converted or invested,  then, in such  event, it is deemed to  be consistent with the will of the testator  to  consider the  life  interest as commencing when the conversion  takes  place or  the invest- ment is made.   This latter rule is  subject to  the qualification, in the absence of a specific time fixed by the will, that the conversion or investment must be made within a  reasonable time; and the legatee for life can not be kept out of  the interest or income beyond such reasonable time.   Most, or  many of the cases, seem to settle on one year as  such reasonable time; but it appears to be so fixed in analogy to some statutory provision, such  as one year  being allowed for  the  payment of legacies, or the settlement of estates.    See Williamson v. Williamson, 6 Paige Ch. 304, 305; Cogswell v. Cogswell, 2 Edwards, 236;

Clifford v. Davis.

Gibson v. Bott, 7 Vesey Ch. 89; 1 Roper on Legacies, 588; Valentine v. Ruste, 93 Ill. 585. Under the statutes of this State, two years are allowed for the settlement of the estates of deceased persons, and we are of opinion that in analogy two years should be deemed a reasonable time for the conversion and re-investment of devised property for the purpose of constituting a residuary fund.

2.  It was not error to charge the executor with $75, it being 10 per cent. interest from March 1st to June 1st, 1879, on his promissory note for $3,000 bearing that rate of interest, executed to his testator in the lifetime of the latter. The note was not due until the last mentioned date, and it was for the interest of the trust fund the note and interest should run until maturity. The estate could not be settled before January 9, 1880, when the two years would expire; the money was not needed to pay debts, or otherwise for present use, and it was not paid for the purpose of making a re-investment before the note was due. The only effect of the act of the executor was to deprive the trust fund of this $75, and enable himself to make that amount personally at the expense of the estate A trustee is not permitted to thus speculate in the trust fund and make a profit to its detriment.

The doctrine of *res adjudicata* does not apply to this item of charge, as is so strongly insisted by appellant. If the claim urged should prevail, the body of the fund would be diminished by the amount mentioned, and the loss would fall not only upon the legatees for life, but to a still greater extent upon the remaindermen, among whom, after the decease of those holding life interests, it was provided by the will the fund should be divided. Besides this, we do not understand the evidence in the record to sustain the defense of a former adjudication, even were the life tenants the only parties in interest. The plea must necessarily be predicated either upon the order of the County Court of March 12, 1879, or that of August 8, 1879, or that of August 31, 1881. The first mentioned order does not show the life tenants were present either in person or by attorney, but on the contrary the record thereof does show it was merely an *ex parte* order approving

the first report or account current of the executor. It is true that appellant says in his testimony that "Davis & Thompson were present when the first account was filed; they were there resisting the report;" but it does not appear from his evidence who they were there representing; and his statement seems to be in conflict with the recitals in the record. The order of August 8, 1879, was based upon the motion of July 30, 1879, and that only presented the question whether Fanny and Rachel Hester, who were poor and needy, should on that ground have the use of certain interest accruing from the death of the testator to March 1, 1879, that had been collected by appellant, and did not involve the question of the propriety of the items of account contained in the account current, approved by the court in the preceding March. Nor is there force in the point made with reference to the splitting of a claim, as the matter at issue was interest that had then been collected by the executor, and that of course did not include interest that had not been collected. The first item in the account current approved August 31, 1881, is a charge of the executor against himself of "Amt. on hand at approved account of March 12, 1879, $5,912.52." It seems this amount is the balance brought forward from the first account current, and that the executor had reported as collected, the principal of the $3,000 note, and it entered into and went to make up such balance. The fact the life tenants were present by counsel when this report of August 31st was approved, affords the only pretense for claiming *res judicata* by virtue of the order of approval then entered. The principal of the $3,000 note had been due by the terms of the contract more than two years prior to the entry of this order, and we deem it was not incumbent upon the life tenants to object to this last report merely because an account current presented nearly two years and a half prior thereto had given an improper date to an item. Besides, they did substantially and at once object to what the executor had done, by at once filing their motion to charge him with 10 per cent. interest on his note from March 1, to June 1, 1879; and the court disposed of the whole matter for the term and in the same order by approving the account current and con-

Clifford v. Davis.

tinuing the motion, thereby reserving the real issue between the parties for future consideration. We are not inclined to extend the doctrine of former adjudication to so doubtful and flimsy a case, and especially so when the effect will be to enable the trustee to wrong the trust estate, placed in his hands, to his own gain and profit.

3. It was proper to charge the executor with 10 per cent. interest on the moneys in his hands after the expiration of two years and six months from the date of his letters testamentary and up to the time of his investment of the funds, that is to say, from July 9, 1880 to April 19, 1881. The last clause of Sec. 113 of Chap. 3, R. S., provides such change shall be made, " unless good cause is shown to the court why such should not be taxed." Estate of Schofield, 99 Ill. 513. We think no good cause is here shown why the penalty imposed by the statute should not be taxed. While it is true the will provides the executor should sell all the property, real and personal, so that the whole of the assets shall be turned into money, and follows this up by saying, " the whole of such proceeds shall then be invested in good and sufficient securities, yet we think the reasonable meaning of the will is that the word " then " refers to such times as any of the property shall be turned into money of a sufficient amount to afford full and ample opportunity for profitable investment in interest-paying securities. The evidence shows that the testator died seized of a farm containing 136½ acres of land, of a block of ground in the city of Knoxville, of goods and chattels valued at $753.68, and of some $5,000 in collectible notes and accounts, principally notes drawing interest. It is unreasonable to suppose the testator intended no investment of money should be made by his executor until every article and parcel of property was disposed of and turned into money. It might require years to do this, and the delay would work a serious detriment to the trust fund and to the *cestui que trust*. The primary objects of his bounty were the widow of his son, who was supporting herself and her daughter by her labor, and his own daughter, who was in bad health and gaining a livelihood by needle-work. It is highly improbable

he intended no investment should be made and no income realized for the benefit of this daughter and daughter-in-law until the whole of the property, no matter how unsalable some of it might be, was converted into money. The direction in his will the executor should "if practicable" get securities upon which the interest would be paid semi-annually, precludes such idea. For more than two years before he made any investment, the trustee had in his hands over $5,000, which was drawing no interest and was not required for present use. No reason appears why he might not readily, safely and profitably have invested it. It was his plain duty to the holders of the life interest to have procured, with the money, securities that would produce an income instead of keeping it idly on hand for so long a time. At the very least, he should have done this within the two years allowed for administration; and it is no hardship he should be held to pay the statutory interest after the expiration of six months thereafter.

4. The first assignment of cross-error is not well made. It was properly adjudged the executor was not liable for interest upon the moneys in his hands, from March 1, 1879, to March 1, 1880. It does not appear he ever received interest on these trust funds prior to the date of his investment in the mortgage. Under the statute he was responsible for no interest or penalty until more than four months after the date last mentioned. See, Estate of Schofield, *supra*. The fact his attorney at one time made out a report charging him with such interest, which appellant signed but which was never filed or acted upon by the court, and afterward withdrawn, would not estop him from contesting the claim for this interest. The law did not charge him with it, and the item was evidently put in the report through a misapprehension, and the fact it was so put there, worked no fraud or injury to any one.

5. The second cross-error is not well assigned. The substance of the claim is, that the court should have ordered the net profits or increase of the estate from the death of the testator up to the time of the investment in the mortgage, to be paid to the life tenants. The holders of this life interest

Clifford v. Davis.

must be willing to accept the bounty of the testator upon the terms upon which it was given.   The will donated to them no interest whatever in the lands, or in the rents, issues and profits thereof, and it did not bestow upon them the chattel property or the choses in action on hand at the time of the death, or any interest thereon or increase therein which might accrue; these things were all expressly devised and bequeathed to the executor, but upon the trusts declared in the will.   That which was given to these donees was specifically the interest to accrue upon a fund yet to be created, and that only.   The power and the duty to convert the assets of the estate into money, and then invest such money in interest-bearing securities, was a personal trust imposed by the testator upon appellant, and it was by the terms of the will left to him to determine when the best interest of the estate would permit the selling of the property.   No specific time was fixed by the will when the property was to be converted or the proceeds invested.   These matters were left by the testator to the sound discretion of the executor and trustee.   But the rule of equity heretofore referred to, qualifies this otherwise unlimited power and discretion, and requires in the interest of the life tenants, that the conversion and investment should be made within a reasonable time ; and, as we have also seen, such reasonable time in this State is two years from the date of the letters testamentary.   In the case of People v. Jennings, 44 Ill. 488, where a testator directed his executors to sell his real estate and divide the proceeds equally among his children, it was held that the interests of the children did not vest until the real estate had been converted into money as directed by the will.   See also, Valentine v. Ruste, 93 Ill. 585. We think from the terms of the will and upon authority, that the net rents and interest accruing from the death of testator to the time of re-investment are to be considered as assets to increase the principal of the trust fund, and that the court properly incorporated them therewith and refused to decree that they should be paid to the legatees for life.

    6.   The holders of the life interest will suffer no hardship from their failure to get the rents of the farm and this inter-

est which accrued upon the trust funds; these amounts go to swell the body of the estate, and the life tenants will have the income of the clear residue of the fund, as ascertained, to be computed from January 9, 1880, the date of the expiration of the reasonable time within which the executor should have made the conversion and investment. He having failed to do so, equity will regard that as done which should have been done, and enter decree in accordance therewith.

7. We hold, the Circuit Court advisedly adjudged that the executor should account for the interest charges of $75 and $308.89, respectively; that these amounts and the net rents and income of the farm, $559.70, should go to increase the *corpus* of the trust fund; and that the executor was not chargeable with interest on moneys in his possession from March 1, 1879, to March 1, 1880; and these several portions of the decree are affirmed. We further hold it was error to order the legatees for life should be paid interest on the trust fund as ascertained from the date of the death of the testator, and for the reason the general rule as first stated by us does not apply to the will in question, because by its terms one species of property was to be converted into another and the residuary fund invested in a particular manner, and the life estates were in the funds as thus last constituted.

The amounts due the life tenants having been computed upon the theory, their interests in the fund commenced from the death of the testator, instead of from the 9th day of January, 1880, the money decree entered was erroneous. For the errors indicated, these two latter portions of the decree are reversed, and the cause is remanded for further proceedings in regard thereto in conformity with the views herein expressed.

The record shows in respect to the item of $506.51, that it was expressly adjudicated in 1879 by a court of competent jurisdiction that it belonged to Jane Hester and Fanny Hester, the tenants for life, and was ordered to be paid by the executor to them by a certain day fixed by the court. This, as between the executor and the life tenants, renders the matter of this sum of $506.51 *res judicata*. Therefore in

stating the account this item should not be taken into consideration, and no deduction should be made on account thereof in making computation of the amount due the life tenants.

It is further ordered that each party pay one-half the costs of this appeal, the costs taxed against William Davis, administrator, to be paid in due course of administration.

*Affirmed in part, and reversed in part.*